**NOTICE:   SLIP OPINION**
**(not the court's final written decision)**

The opinion that begins on the next page is a slip opinion.  Slip opinions are the written opinions that are originally filed by the court.

A slip opinion is not necessarily the court's final written decision.  Slip opinions can be changed by subsequent court orders.  For example, a court may issue an order making substantive changes to a slip opinion or publishing for precedential purposes a previously "unpublished" opinion.  Additionally, nonsubstantive edits (for style, grammar, citation, format, punctuation, etc.) are made before the opinions that have precedential value are published in the official reports of court decisions: the Washington Reports 2d and the Washington Appellate Reports.  An opinion in the official reports replaces the slip opinion as the official opinion of the court.

**The slip opinion that begins on the next page is for a published opinion, and it has since been revised for publication in the printed official reports.**  The official text of the court's opinion is found in the advance sheets and the bound volumes of the official reports.  Also, an electronic version (intended to mirror the language found in the official reports) of the revised opinion can be found, free of charge, at this website: https://www.lexisnexis.com/clients/wareports.

For more information about precedential (published) opinions, nonprecedential (unpublished) opinions, slip opinions, and the official reports, see https://www.courts.wa.gov/opinions and the information that is linked there.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

FILED
SUPREME COURT
STATE OF WASHINGTON
10/20/2021
BY ERIN L. LENNON
CLERK

# IN THE SUPREME COURT OF THE STATE OF WASHINGTON

STATE OF WASHINGTON,

             Respondent,

     v.

JESSICA L. VAZQUEZ,

             Petitioner.

No. 98928-1

ORDER
AMENDING
OPINION

It is hereby ordered that the majority opinion, filed September 9, 2021, in the above entitled case is amended as indicated below. All references are to the slip opinion.

On page 13, line 8, after "inadmissible evidence is", delete "unlikely" and insert "less likely".

On page 22, line 16, after "Hendrickson to the", delete "identify" and insert "identity".

DATED this __20th__ day of October, 2021.

_____
          González C.J.
          Chief Justice

APPROVED:

_____
     Madsen, J.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/

**FILE**

IN CLERK'S OFFICE
SUPREME COURT, STATE OF WASHINGTON
SEPTEMBER 9, 2021

*González C.J.*
CHIEF JUSTICE

THIS OPINION WAS FILED
FOR RECORD AT 8 A.M. ON
SEPTEMBER 9, 2021

*Erin L. Lennon*
ERIN L. LENNON
SUPREME COURT CLERK

# IN THE SUPREME COURT OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 98928-1 |
| Respondent, | ) | |
| v. | ) | En Banc |
| JESSICA L. VAZQUEZ, | ) | |
| Petitioner. | ) | Filed: September 9, 2021 |

MADSEN, J.—Jessica Vazquez was convicted of maintaining a dwelling for controlled substances, possessing methamphetamine, and possession of drug paraphernalia. Sarah McFadden, Vazquez's attorney, objected only once during trial, which resulted in the jury considering highly prejudicial, inadmissible evidence. Vazquez claims that the Court of Appeals did not properly evaluate counsel's performance and that she was denied effective assistance of counsel. We agree and reverse Vazquez's convictions.

## BACKGROUND

On October 21, 2017, Jessica Vazquez was arrested at a residence in Clarkston, Washington. Earlier that morning, police officers executed a search warrant, specifically

No. 98928-1

targeting Vazquez for methamphetamine sales she was allegedly conducting at the residence. Upon initial entry, the police detained multiple individuals and searched the area. The officers uncovered two playing-card-deck-sized tins hidden in a pillowcase, containing $120 in cash and approximately 9.11 grams of methamphetamine. The officers also found a ledger/binder (pay and owe sheets) that contained names and amounts paid, about 100 small plastic bags found with the ledger/binder, a police tactical vest, and multiple fake guns.

While the police were searching, the owner of the house, Justin Patton, arrived. Patton informed the police that two of the detained individuals—Shawn McLaughlin and Dale Fitzhugh—resided at the house. McLaughlin informed the police that he was dating Vazquez and living with her at the residence. The officers continued to search the house, eventually finding Vazquez and Christine Babbish under the stairwell, behind a false wall. A record check revealed that Vazquez had a felony narcotics warrant and a Department of Corrections (DOC) warrant. Police interviewed Babbish, who stated that she was in the bedroom with Vazquez and another male when police arrived. She revealed the location of methamphetamine in the pillowcases and stated that Vazquez had placed the drugs inside the pillowcase when law enforcement arrived.

The Asotin County prosecutor charged Vazquez with three offenses: (1) maintaining a dwelling for controlled substances under RCW 69.50.402(1)(f), a class C felony, (2) possessing methamphetamine under RCW 69.50.401(2)(b), a class B felony, and (3) possession of drug paraphernalia under RCW 69.50.412(1), a misdemeanor.

2

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

No. 98928-1

At trial, the defense's theory was that law enforcement was "tunnel visioned," ignoring other, more culpable individuals who resided at the Clarkston house. McFadden's strategy was to paint Vazquez as a drug user, not a drug dealer. Throughout the entire trial, McFadden objected only once and that was to the admission of a photo alleged to be of Vazquez, which McFadden had previously agreed was admissible.

The jury found Vazquez guilty of all three charges. Soon after, McFadden was arrested for driving under the influence (DUI) and possession of cocaine. Prior to sentencing, the trial court sent a letter to Vazquez that detailed the above event and asked if Vazquez wished to change attorneys. Vazquez signed paper work allowing McFadden to continue representing her. The record does not indicate whether Vazquez received advice of counsel before agreeing to McFadden's continued representation.

Vazquez appealed her convictions, raising ineffective assistance of counsel, among other issues. The Court of Appeals affirmed.[1] *State v. Vazquez*, No. 36365-1-III, slip op. at 5-6 (Wash. Ct. App. June 11, 2020) (unpublished), https://www.courts.wa.gov/opinions/pdf/363651_unp.pdf. The court reasoned that McFadden's trial strategy "played to those facts—Ms. Vazquez was just another user

---

[1] Vazquez brought various other challenges: the plea agreement, McFadden's personal issues with drugs and alcohol, the imposition at sentencing of a criminal filing fee, various drug fines, a DNA (deoxyribonucleic acid) testing fee, and an HIV (human immunodeficiency virus) testing fee. *State v. Vazquez*, No. 36365-1-III, slip op. at 4-7 (Wash. Ct. App. June 11, 2020) (unpublished), https://www.courts.wa.gov/opinions/pdf/363651_unp.pdf. On the issues regarding the plea agreement and McFadden's personal criminal charges, the Court of Appeals held these issues lacked factual support in the record. *Id.* at 4-5. On the remaining issues, the Court of Appeals held that the trial court had erroneously treated the drug fines, crime laboratory fee, the methamphetamine fee, and the HIV testing as mandatory. *Id.* at 7. The Court of Appeals held that the DNA fee was properly imposed but reversed the HIV testing order. *Id.*

3

No. 98928-1

rather than a dealer" and "Vazquez was a victim of police 'tunnel vision' that ignored more culpable individuals." *Id.* at 6. The court did not assess each instance in which Vazquez contended her attorney was deficient. Instead, the court dealt with the claimed deficiencies in the aggregate. In a very brief discussion, the Court of Appeals concluded that, while some of the evidence to which counsel failed to object was likely inadmissible, the inadmissible evidence furthered the defense theory and the lack of objection was part of counsel's strategy. From this analysis, the court concluded that Vazquez did not establish McFadden's performance was deficient or that her trial was unfair because of McFadden's mistakes. Vazquez moved for reconsideration, which the Court of Appeals denied. She then petitioned this court for review. We granted review only on the issue of whether McFadden's performance violated Vazquez's right to effective assistance of counsel. *State v. Vazquez*, 196 Wn.2d 1024 (2020).

ANALYSIS

Both the United States and Washington Constitutions guarantee a criminal defendant the right to effective assistance of counsel. *See State v. Lopez*, 190 Wn.2d 104, 115, 410 P.3d 1117 (2018); *see also* U.S. CONST. amend. VI; WASH. CONST. art. I, § 22. Courts indulge a strong presumption that the counsel is effective. *State v. McFarland*, 127 Wn.2d 322, 334-35, 899 P.2d 1251 (1995). "To demonstrate ineffective assistance of counsel, a defendant must make two showings: (1) defense counsel's representation was deficient, i.e., it fell below an objective standard of reasonableness based on consideration of all the circumstances; and (2) defense counsel's deficient representation

4

No. 98928-1

prejudiced the defendant, i.e., there is a reasonable probability that, except for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.*; *see also Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. A reasonable probability is lower than a preponderance standard. *State v. Estes*, 188 Wn.2d 450, 458, 395 P.3d 1045 (2017) (citing *Strickland*, 466 U.S. at 694).

The defendant has the burden to show that defense counsel's performance was deficient based on the trial court record. *McFarland*, 127 Wn.2d at 335. Specifically, "the defendant must show in the record the absence of legitimate strategic or tactical reasons supporting the challenged conduct by counsel." *Id.* at 336; *see also State v. Garrett*, 124 Wn.2d 504, 520, 881 P.2d 185 (1994). A classic example of trial tactics is when and how an attorney makes the decision to object during trial testimony. *State v. Madison*, 53 Wn. App. 754, 762-63, 770 P.2d 662 (1989). Defense "[c]ounsel engages in . . . legitimate trial tactic[s] when forgoing an objection in circumstances when counsel wishes to avoid highlighting certain evidence." *State v. Crow*, 8 Wn. App. 2d 480, 508, 438 P.3d 541, *review denied*, 193 Wn.2d 1038 (2019) (citing *In re Pers. Restraint of Davis*, 152 Wn.2d 647, 714, 101 P.3d 1 (2004)).

If a defendant centers their claim of ineffective assistance of counsel on their attorney's failure to object, then "the defendant must show that the objection would likely have succeeded." *Id.* "Only in egregious circumstances, on testimony central to the

5

No. 98928-1

State's case, will the failure to object constitute incompetence of counsel justifying reversal." *Id*. However, if defense counsel fails to object to *inadmissible* evidence, then they have performed deficiently, and reversal is required if the defendant can show the result would likely have been different without the inadmissible evidence. *Id.* at 508-09. "'[C]laims of ineffective assistance of counsel present mixed questions of law and fact'" and are reviewed de novo. *Lopez*, 190 Wn.2d at 116, 117 (alteration in original) (quoting *In re Pers. Restraint of Brett*, 142 Wn.2d 868, 873, 16 P.3d 601 (2001)).

Vazquez asserts that McFadden's lack of objections during trial plainly demonstrate inadequate representation. Vazquez points to several instances during trial of inadmissible evidence being admitted without objection and argues this lack of objections is unlikely to be the product of a reasoned strategy.

Representation of a criminal defendant carries "certain basic duties." *Strickland*, 466 U.S. at 688. These duties include assisting the defendant, advocating for the defendant's cause, and utilizing "such skill and knowledge as will render the trial a reliable adversarial testing process." *Id.* (citing *Powell v. Alabama*, 287 U.S. 45, 68-69, 53 S. Ct. 55, 77 L. Ed. 158 (1932)). This court has recognized standards of effective defense attorneys. *State v. A.N.J.*, 168 Wn.2d 91, 110, 225 P.3d 956 (2010) ("[W]hile not binding, relevant standards are often useful to courts in evaluating things like effective assistance of counsel."). Importantly, these duties are not a checklist for judicial evaluation of performance, however, and in considering an ineffectiveness claim, courts may look to prevailing norms and expectations of attorneys as guides to determine what

6

No. 98928-1

is reasonable. *Strickland*, 466 U.S. at 688 (referencing, as such a guide, the ABA

*Standards for Criminal Justice* (2d ed. 1980)); *see also A.N.J.*, 168 Wn.2d at 109-10.

The ABA *Standards* expect that a defense attorney will take steps necessary to ensure a

clear and complete trial record, including making objections; will develop, in

consultation with the defendant, a defense strategy that includes a theory of the case; as

well as will know the rules of evidence. ABA, *Criminal Justice Standards for the*

*Defense Function* stds. 4-1.5, 4-3.7, 4-7.6 (2017).

Because it is Vazquez's burden to demonstrate ineffective assistance of counsel

and due to the nature of her claim, we engage in an extensive review of the trial record to

determine whether McFadden's failure to object, in each instance identified by Vazquez,

constitutes legitimate trial tactics. *See Davis*, 152 Wn.2d at 673 (noting the requirement

of an individualized inquiry into defense counsel's performance when considering an

ineffective assistance of counsel claim).

A few or even several failures to object are not usually cause for finding that an

attorney's conduct has fallen below the objective standard of conduct. *E.g.*, *State v.*

*Strange*, 188 Wn. App. 679, 688-91, 354 P.3d 917 (2015) (holding that trial counsel's

decision not to object was a legitimate trial tactic even if a witness's statements were

irrelevant or improper opinion testimony); *State v. McLean*, 178 Wn. App. 236, 247-48,

313 P.3d 1181 (2013) (holding that withholding an objection constituted a legitimate trial

tactic seeking to avoid emphasizing inadmissible evidence of past alcohol intoxication

and arrest in the course of a DUI trial). In this case, however, given the evidence that

7

No. 98928-1

would have been excluded, coupled with the effect of the evidence on the jury's decision, McFadden's failure to object to prior convictions, threats to witnesses, hearsay statements regarding Vazquez's alleged drug sales, and police profile testimony as it relates to the tactical vest, fell below the objective standard of reasonableness and resulted in prejudice to Vazquez as explained below. *Strickland*, 466 U.S. at 688-89.

I. Prior Criminal Convictions

Vazquez's first claim relates to her attorney's failure to object to the admission of several prior convictions, including two counts of methamphetamine delivery, escape from community custody, and possession of methamphetamine.[2]

On direct examination, McFadden asked Vazquez to explain the events of October 21, 2017. Vazquez testified that she was lying in bed, waiting for Sarah Cannis to return with food, when she heard on the police scanner that Cannis had been pulled over and arrested. She heard a "crowd of people walking across the gravel" on the surveillance scanner in her room. Tr. of Proceedings (TP) (Sept. 7, 2018) at 241. When Vazquez heard the police were at the door, she grabbed her clothing and hid due to her outstanding arrest warrant—she had not checked in with DOC, and she feared she would be sent to prison or that her drug offender sentencing alternative (DOSA) would be revoked.

McFadden asked if the drugs found in the pillowcase belonged to Vazquez, and Vazquez answered that if she was in possession of drugs, "especially if it was in a

---

[2] Vazquez also had convictions for theft and forgery, and she does not challenge admission of these prior convictions.

8

No. 98928-1

pillowcase right underneath [her] bed," Vazquez would have taken the pillowcase rather

than her pants in order to hide the drugs. *Id*. at 242.

On cross-examination, Vazquez and the prosecutor had the following

exchange:

> [PROSECUTOR]: You have some criminal history, don't you, Ms.
> Vazquez?
> [VAZQUEZ]: I have a very lengthy criminal history, sir.
> [PROSECUTOR]: Starting with Theft in the 2nd Degree and
> Forgery in 2011 out of Walla Walla?
> [VAZQUEZ]: Yes.
> [PROSECUTOR]: Since you mentioned lengthy, Delivery of
> Controlled Substance, two Counts, in 2014 here in Asotin County?
> [VAZQUEZ]: Yes.
> [PROSECUTOR]: Escape from Community Custody in 2015.
> That's not reporting to your probation officers, right?
> [VAZQUEZ]: Yes. I didn't try to—don't think—I did not try to
> escape a jail. I didn't turn in—I didn't check in to my CO [(community
> custody officer)].
> [PROSECUTOR]: And then Possession of Methamphetamine out of
> Garfield County.
> [VAZQUEZ]: Yes, that was actually paraphernalia, but.
> [PROSECUTOR]: And that was the charge—that was the case that
> you were on your DOSA you said and you didn't report and had a warrant
> out from DOC?
> [VAZQUEZ]: Yes. That was the Narcotics Warrant that was put
> out. It was because I had a narcotics charge and so that makes it a
> Narcotics Warrant when you don't check in with your DOC officer.

*Id*. at 255-56. McFadden did not object. On redirect, McFadden tried twice to ask

Vazquez about her criminal convictions: "We heard [the prosecutor] read off your

criminal history. On the convictions that we just heard, did you take those to a jury trial

or did you plead to those?" and "[w]ould you admit that you're guilty of the crimes that

were just listed?" *Id*. at 257. Both times the prosecutor objected to relevance.

9

No. 98928-1

### A. ER 609 and the "Open Door" Doctrine

Generally speaking, "[e]vidence of prior felony convictions is . . . inadmissible against a defendant because it is not relevant to the question of guilt yet very prejudicial, as it may lead the jury to believe the defendant has a propensity to commit crimes." *State v. Hardy*, 133 Wn.2d 701, 706, 946 P.2d 1175 (1997). This is especially so in cases where "the defendant is the witness because it tends to shift the jury focus 'from the merits of the charge to the defendant's general propensity for criminality.'" *Id*. at 710 (quoting *State v. Jones*, 101 Wn.2d 113, 120, 677 P.2d 131 (1984), *overruled in part on other grounds by State v. Brown*, 113 Wn.2d 520, 782 P.2d 1013 (1989)). "[I]f the jury learns that a defendant previously has been convicted of a crime, the probability of conviction increases dramatically." *Id.* at 710-11 (citing Alan D. Hornstein, *Between* Rock *and a Hard Place: The Right to Testify and Impeachment by Prior Conviction*, 42 VILL. L. REV. 1 (1997)).

ER 609 functions as a "narrow exception to this rule against admitting evidence of prior convictions." *Id*. at 706. The court has discretion to admit ER 609(a)(1) felonies if the court determines that the probative value outweighs the prejudice. *State v. Wilson*, 83 Wn. App. 546, 549, 922 P.2d 188 (1996). Pursuant to ER 609(a)(1), "the sole purpose of impeachment evidence is to enlighten the jury with respect to the defendant's credibility as a witness." *Jones*, 101 Wn.2d at 118. "If the prior conviction is probative of veracity under ER 609(a)(1) the court must still assess prejudicial effect." *Hardy*, 133 Wn.2d at

No. 98928-1

710. Under ER 609(a)(2), "[d]rug convictions are not crimes of 'dishonesty or false statement' like perjury or criminal fraud." *Id*. at 707.

Vazquez argues that McFadden's failure to object to questions about her criminal history was deficient because an objection would have been sustained. The State appears to concede that such an objection would have been sustained and, instead, argues that Vazquez opened the door by the exchange above or that her attorney's lack of objection was strategic. Vazquez responds that a passing, general reference to an issue before the court does not open the door. Specifically, she alleges that the State introduced the subject of her prior convictions during cross-examination by asking a broad question.

Under the "open door" doctrine

[a] party may introduce inadmissible evidence if the opposing party has no objection or may choose to introduce evidence that would be inadmissible if offered by the opposing party. . . . [T]he introduction of inadmissible evidence is often said to "open the door" both to cross-examination that would normally be improper and to the introduction of normally inadmissible evidence to explain or contradict the initial evidence.

5 KARL B. TEGLAND, WASHINGTON PRACTICE: EVIDENCE LAW AND PRACTICE § 103.14, at 65 (6th ed. 2016).

Vazquez testified on direct examination that she hid during the search of the house because she had an outstanding warrant. This testimony did not "open the door" to the particulars of her prior convictions.

Nor did Vazquez place her character in evidence. Generally, questions regarding prior drug sales are not admissible unless the defendant testifies about a character trait. *State v. Avendano-Lopez*, 79 Wn. App. 706, 716, 904 P.2d 324 (1995). In *Avendano-*

11

No. 98928-1

*Lopez*, the defendant was charged with cocaine possession with intent to deliver and was questioned at trial about past drug use and sales activities. *Id*. at 708. Upon conviction, the defendant appealed and argued the questions about prior drug use constituted prosecutorial misconduct. *Id*. at 713. The Court of Appeals concluded that the defendant did not "open the door" because he did not put his character at issue. *Id*. at 716. The court reasoned that the questions were improper and irrelevant, "whether or not [the defendant] had previously sold narcotics had no legitimate bearing on whether, on the date in question, he possessed with intent to deliver." *Id*. at 713.

Like the prosecutor in *Avendano-Lopez*, the prosecutor in this case asked Vazquez a broad question about her criminal history. Vazquez gave a broad answer, and the prosecutor took advantage of that answer by asking about her prior drug convictions. Vazquez's answer that she had extensive criminal history did not open the door because, again similar to *Avendano-Lopez*, Vazquez's previous drug convictions had no relevance to the charged crimes.

The State also argues that McFadden had a clear strategy to use Vazquez's convictions during her redirect examination. Specifically, the State suggests McFadden's questions were intended to show Vazquez accepted responsibility for crimes she committed.

Even if McFadden's strategy was to portray Vazquez, not as a drug seller but, instead, as a low-level drug user who takes responsibility when she is guilty, failing to object to Vazquez's prior convictions was not a reasonable decision. *See Davis*, 152

12

No. 98928-1

Wn.2d at 672-73. First, prior instances of selling drugs are inadmissible and highly

prejudicial when a person is charged with similar or the same drug violations. Second,

evidence that Vazquez had been convicted of possession with intent to deliver was

contrary to the picture of a low-level drug user that counsel was trying to paint. Finally,

the State objected to McFadden's questions regarding whether Vazquez pleaded guilty to

the charges on the basis of relevance and the objections were sustained, a ruling which

McFadden should have expected. As courts have recognized, failure to object to

inadmissible evidence is unlikely to be part of a reasonable strategy, particularly when

the inadmissible evidence is highly prejudicial. *Roe v. Flores-Ortega*, 528 U.S. 470, 481,

120 S. Ct. 1029, 145 L. Ed. 2d 985 (2000) ("The relevant question is not whether

counsel's choices were strategic, but whether they were reasonable.").

B. ER 404(b)

Next, Vazquez asserts that McFadden's conduct fell below accepted standards of

representation when she failed to object to the State's questions on redirect of Christine

Babbish.

During redirect, the prosecutor asked Babbish,

> [PROSECUTOR]: . . . You were aware that Ms. Vazquez was—had
> been selling, even if it's small amounts—you were aware that she'd been
> selling meth?
> [BABBISH]: I knew she was using because that's—we can always
> count on that. I mean, for the both of us, but I—yeah.
> [PROSECUTOR]: In that interview that I spoke of earlier, the
> recorded interview.
> [BABBISH]: Mm-hmm (affirmative).

13

No. 98928-1

> [PROSECUTOR]: You told us that she had been—you were aware that she had been selling, she just wasn't selling as much as everybody thought?
>
> [BABBISH]: Now you're going to twist my words. I think the exact words were hopefully, that's exactly—I think almost exact was Jessie Vazquez has never been a big drug dealer like you all think she is. Has she sold drugs? Yes.
>
> [PROSECUTOR]: No further questions.

TP (Sept. 6, 2018) at 162-63.

Vazquez asserts the State's questions were improper propensity evidence under ER 404(b). The purpose of ER 404(b) is to "prohibit the State from attempting to use evidence of bad acts in order to prove the propensity of the defendant to commit the same type of bad act." *State v. Trickler*, 106 Wn. App. 727, 734, 25 P.3d 445 (2001). Vazquez maintains that the State's questions had no limits as to time or place and were inadmissible propensity evidence and also that McFadden should have objected.

The State contends that Babbish's testimony regarding Vazquez's drug activities was admissible to show intent and plan under ER 404(b). *See State v. Thomas*, 68 Wn. App. 268, 272-73, 843 P.2d 540 (1992). The evidence presented is both relevant to the "month and a half leading up to the search warrant" and "to the charge of Maintaining a Drug Dwelling." Br. of Resp't at 18 (Wash. Ct. App. No. 36365-1-III (2019)). Thus, the State argues, McFadden was not ineffective for failing to object to admissible testimony.

Under ER 404(b), "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith." *See also Trickler*, 106 Wn. App. at 732 ("such evidence may be admissible for other purposes, including intent, knowledge, or absence of mistake"). A court admits this type

No. 98928-1

of evidence "only if it meets two distinct criteria." *State v. Saltarelli*, 98 Wn.2d 358, 362, 655 P.2d 697 (1982). First, the evidence must be shown to be logically relevant to a material issue. *Id*. To determine this, courts ask "'whether the evidence as to other offenses is relevant and necessary to prove an essential ingredient of the crime charged.'" *Id*. (quoting *State v. Goebel*, 40 Wn.2d 18, 21, 240 P.2d 251 (1952), *overruled in part on other grounds by State v. Lough*, 125 Wn.2d 847, 889 P.2d 487 (1995)). Second, provided the evidence is relevant, its probative value must be shown to outweigh its potential for prejudice. *Id*.

To be logically relevant, the identified fact for which the evidence is to be admitted is "'of consequence to the outcome of the action' and tends to make the existence of the identified fact more or less probable." *Thomas*, 68 Wn. App. at 273 (quoting *Saltarelli*, 98 Wn.2d at 362-63). "Evidence is legally relevant if its probative value outweighs its prejudicial effect under ER 403." *Id*. (citing *Saltarelli*, 98 Wn.2d at 363). Irrespective of logical and legal relevance, evidence may not be admitted merely "to prove the character of the accused in order to show that he or she acted in conformity with it." *Id*. (citing *Saltarelli*, 98 Wn.2d at 362).

In *Thomas*, the defendant appealed his controlled substance conviction under ER 404(b). *Id*. at 269-70. Thomas argued that the admission of police officers' testimony that they had seen what appeared to be Thomas selling drugs in three separate incidents constituted propensity evidence. The Court of Appeals disagreed, reasoning that the

15

officers' testimony logically related to the material issue of what Thomas intended to do with the cocaine he possessed. *Id*. at 273. The court held that while the officers' testimony was prejudicial, it was not *unfairly* prejudicial and its probative value outweighed the prejudicial effect. Accordingly, no ER 404(b) violation occurred. *Id*. at 274.

Unlike the defendant in *Thomas*, where officers had seen Thomas allegedly selling drugs on three separate occasions, in this case Babbish did not testify she had witnessed Vazquez selling drugs, when and where the alleged sales had been made, or whether the sales were connected to the house where Vazquez was found. Contrary to the State's assertion, this testimony did not provide any information about the time leading up to the warrant because Babbish did not mention any dates, times, or details about the sales. Absent any connection to the charges here, this testimony was intended only to show Vazquez had the propensity to sell drugs. *See* ER 404(b).

Furthermore, before admitting evidence that the defendant committed bad acts constituting crimes other than the acts charged, a trial court must, among other things, "find by a preponderance of the evidence that the uncharged acts probably occurred before admitting the evidence." *State v. Kilgore*, 147 Wn.2d 288, 292, 53 P.3d 974 (2002) (citing *State v. Pirtle*, 127 Wn.2d 628, 649, 904 P.2d 245 (1995)). McFadden did not object to Babbish's testimony that Vazquez had sold drugs in the past, and Babbish offered no information demonstrating the acts "probably occurred," such as times, dates, or locations of the alleged drug sales. *See id*. Indeed, Babbish offered no information at

16

No. 98928-1

all on the claimed sales except that they occurred. Based on such scant detail, the testimony would not meet even the preponderance of evidence requirement to have probably occurred, and it instead allowed a jury to make the prohibited inference that "'once a drug dealer, always a drug dealer.'" *United States v. Hicks*, 635 F.3d 1063, 1070 (7th Cir. 2011).

In addition, the failure to object to inadmissible evidence was not a reasonable trial strategy. Assuming McFadden's strategy was to portray Vazquez as a drug user, not a seller, these statements were counter to that strategy.

II. Threats to Witnesses

In the State's direct examination of Babbish and Fitzhugh, the State asked both parties if they were unwilling to testify or had modified their testimony because of threats. Neither witness testified that Vazquez had threatened them, but each said they were threatened. Relying on *State v. Bourgeois*, 133 Wn.2d 389, 945 P.2d 1120 (1997), Vazquez contends the State questioned Babbish and Fitzhugh about threats in order to prejudice the jury, which succeeded because that testimony caused the jury to worry about its own well-being. She contends that McFadden had no strategic reason for failing to object to testimony that bolstered the witnesses' credibility and painted Vazquez as a dangerous and violent person who is guilty of the charged offenses.

The State contends that this line of questioning occurred only after the witnesses made numerous statements that were inconsistent with their earlier statements. The State claims that it properly impeached the witnesses because of their prior inconsistent

17

No. 98928-1

statements and that after the witnesses had been impeached, it was necessary for the State to rehabilitate the witnesses' credibility. The State argues that evidence of threats against a witness is proper to show motive for recantation.

In his closing arguments, the prosecutor referred to the testimony of both Babbish and Fitzhugh, making two statements: "But there was also bias—Mr. Fitzhugh and Ms. Babbish, right? They're concerned. They have concern for themselves because of threats that have been made. So you consider that in assessing their credibility, in assessing their story" and "[t]he drugs aren't hers. Why are two of the witnesses—why are they in fear when they testify?" TP (Sept. 7, 2018) at 274, 300.

After the jury delivered its verdict, one of the jurors asked the trial court about jury safety, noting that some of the witnesses were threatened and that jurors wanted to ensure everyone could feel safe and what the response would be if someone was threatened.

Witness testimony regarding their fear may be sufficient to warrant a new trial. "'The general common-law rule is that the proponent may not bolster the witness's credibility before any attempted impeachment.'" *Bourgeois*, 133 Wn.2d at 400-01 (quoting EDWARD J. IMWINKELRIED, EVIDENTIARY FOUNDATIONS 86 (2d ed. 1989)).

In *Bourgeois*, the issue was whether the trial court had committed reversible error by allowing the State to adduce on direct examination of its witnesses that they were afraid to testify. *Id*. at 393. One of the court's instructions to the jury advised:

> "Evidence has been introduced in this case on the subject of the alleged willingness of a witness to testify, including, but not limited to, the alleged fear of the witness. This evidence has been admitted for the limited

18

No. 98928-1

> purpose of assessing the credibility of a witness. You must not consider
> this evidence for any other purpose."

*Id*. at 396.

As *Bourgeois* held, it is error to allow the State to bolster the witness testimony by introducing evidence of threats, imparting to the jury that the witnesses overcame their fear to come to court and testify when the witnesses' credibility had not been attacked. As the court stated, "'[I]n the absence of an attack upon credibility[,] no sustaining evidence is allowed.'" *Id*. at 400 (second alteration in original) (quoting 1 MCCORMICK ON EVIDENCE § 47, at 172 (John W. Strong ed., 4th ed. 1992)). As in *Bourgeois*, the witnesses' credibility in this case had not been attacked. Instead, the State attempted to impeach its own witnesses and then bolster their testimony by demonstrating that despite their fear, the witnesses were willing to testify. This was error. But, even if the evidence of threats could be viewed as proper impeachment evidence, because McFadden did not object, the court did not mitigate the damage from the witness testimony by giving a limiting instruction.

*Bourgeois* also held the trial court erred in permitting the testimony of threats because evidence that a defendant threatened a witness may be admissible to imply the defendant's guilt. *Id*. The court recognized that this sort of testimony may have "bearing on a juror's evaluation of that witness's credibility," but the "evidence might also have another effect. It could lead the jurors to conclude that the witness is fearful of the defendant." *Id*. The court noted that testimony of threats is generally viewed as evidence of guilt. The court reasoned that because a connection between Bourgeois and the

19

No. 98928-1

defendant had not been established, the fear of the witnesses should not have been admitted. Similar to *Bourgeois*, the witnesses in this case testified to receiving threats from an unknown entity. And, as in *Bourgeois*, the jury was left to conclude that the defendant was a dangerous person.

McFadden's failure to object to the testimony regarding threats was not reasonable, nor did it advance her trial strategy.

III. Hearsay Evidence

Vazquez next argues that McFadden provided ineffective representation when she failed to object to hearsay statements testified to by the police officers. Officers testified that their "sources" told them Vazquez both was a known drug seller who spent her time with "well-known drug users/abusers" and was living in the basement of the Clarkston house and selling methamphetamine. TP (Sept. 6, 2018) at 97, 212.

Officer Daniel Vargas, one of the police officers who had conducted the search of the Clarkston residence, testified that during a traffic stop, he learned that Vazquez was at the house selling narcotics from her room. He testified that another officer, Detective Colby Martin, found the methamphetamine in Vazquez's pillowcase based on a statement from Babbish regarding the location of the drugs. On cross-examination, McFadden asked Martin how he had determined the bedroom belonged to Vazquez. Without identifying his source, he testified that "[the police had] been told by cooperating sources that Ms. Vazquez was living downstairs in the residence." *Id.* at 212. On Martin's redirect examination, he restated that prior to the execution of the warrant, more than one

20

No. 98928-1

source had told him Vazquez was living in the basement of the house and selling methamphetamine.

In the State's closing argument, the prosecutor tied Vargas's and Martin's statements together. The prosecutor mentioned that Cannis had also provided this same information to the police officers. The prosecutor stated,

> She said there were drugs for sale in the house and what did the officers find? They found the Defendant in the basement where they were told they would find her, in a bedroom where they found her bedroom [sic]. And they found the methamphetamine for sale. Everything the officers were told they would find, they found.

*Id*. at 297-98.

The State argues that McFadden made a strategic decision to not object to this testimony because it fit the theme presented at trial: that the police focused on Vazquez and ignored other potential suspects. The State contends that when McFadden cross-examined Vargas based on his knowledge, it allowed her to show that most of his information came from Babbish and Fitzhugh.

Hearsay is "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." ER 801(c). The confrontation clause and hearsay evidence go hand-in-hand. The confrontation clause prohibits the admission of testimonial hearsay unless the defendant has the opportunity to cross-examine the declarant. *Crawford v. Washington*, 541 U.S. 36, 68, 124 S. Ct. 1354, 158 L. Ed. 2d 177 (2004)). "A statement is testimonial if a reasonable person in the declarant's position would anticipate that his statement would be

21

No. 98928-1

used against the accused in investigating or prosecuting a crime." *State v. Hendrickson*, 138 Wn. App. 827, 833, 158 P.3d 1257 (2007) (citing *State v. Shafer*, 156 Wn.2d 381, 389, 128 P.3d 87, *cert. denied*, 549 U.S. 1019, 127 S. Ct. 553, 166 L. Ed. 2d 409 (2006)).

When a defendant does not have the opportunity to confront a witness, testimonial hearsay is barred. In *Hendrickson*, the defendant argued his identity theft charge should be reversed, claiming ineffective assistance of counsel. 138 Wn. App. at 831. Hendrickson's attorney did not object to a criminal investigator's testimony that the victim had lost his Social Security card and "no one had permission to use it." *Id*. Although the State asserted that the criminal investigator's testimony fit under an exception to the hearsay rule, the court found the investigator's statements were testimonial because he was a government agent conducting a criminal investigation.

Moreover, because Hendrickson did not have the opportunity to cross-examine the victim since the victim did not testify, the court concluded the criminal investigator's testimony was inadmissible hearsay and barred under *Crawford*. *Id*. at 833. Additionally, the attorney's failure to object to this testimony was a critical error because this testimony was the only evidence that connected Hendrickson to the identify theft charge. The court held that there was no tactical reason for Hendrickson's counsel to not object and that as a result, there was a reasonable probability that "without this evidence Hendrickson would have been acquitted on this charge." *Id*. The Court of Appeals reversed the conviction.

22

No. 98928-1

The present case bears a striking similarity to *Hendrickson*. Here, McFadden did not object to the police testimony that unnamed sources told the police that Vazquez was selling methamphetamine from the Clarkston house. These statements were hearsay: they were offered to prove that Vazquez sold methamphetamine and they violated Vazquez's confrontation right because the sources of the statements, except Cannis, were not identified and they (including Cannis) did not testify. Because this evidence was inadmissible, McFadden unreasonably failed to object. Worse, Vazquez argues, McFadden repeated these points during her cross-examination of Vargas, which only emphasized this inadmissible testimony. Nor was there a reasonable strategy in failing to object to inadmissible evidence. If McFadden's trial theory was to downplay her client's involvement with drugs as only a drug user, testimony about her client selling drugs did not further that strategy.

On direct examination, Vargas testified about the purpose for a tactical vest found in the bedroom allegedly belonging to Vazquez. Explaining that "if someone has narcotics in a certain house and you want them [sic] narcotics, you can go take them. And a lot of times in the bigger cities . . . [t]hey dress and act like police—well, they came in here with vests and they came in here with—and that's how that works." TP (Sept. 6, 2018) at 128, 129.

Relying on *Crow*, Vazquez contends that this testimony amounted to profile evidence and that counsel's failure to object to inadmissible, prejudicial testimony when "the objection would likely have succeeded," is deficient. 8 Wn. App. 2d at 508.

23

No. 98928-1

Generally, "'profile' testimony identifies [a person as a member of] a group . . . more likely to commit a crime." *Avendano-Lopez*, 79 Wn. App. at 710. Profile evidence has the tendency to suggest that "a defendant possesses one or more behavioral characteristics typically displayed by another person engaged in crime." *Crow*, 8 Wn. App. 2d at 495. By using profile evidence, the State attempts to convict the defendant on evidence "beyond the individual circumstances of the case and on one or more traits the accused possesses in common with others who purportedly commit the same crime." *Id*.

"[P]rofile testimony implicates at least four rules. First, profile testimony may lack any relevance [and violate] ER 402." *Id*. "Second, such evidence, though relevant, may unduly prejudice the accused or confuse the jury and . . . violate ER 403." *Id*. at 495-96. "Third, the evidence may constitute impermissible character evidence under ER 404(a) because the profile emphasizes a trait of the accused. Fourth, law enforcement officers typically present profile evidence to bolster a conclusion about the defendant when listing characteristics that, in the opinion of law enforcement officers, are typical of a person engaged in a specific illegal activity." *Id*. at 496 (citing *United States v. Robinson*, 978 F.2d 1554, 1563 (10th Cir. 1992)). "Since most profile testimony emanates from professional witnesses and may lack a scientific or other supportive basis, the evidence may constitute inadmissible expert testimony that conflicts with ER 702." *Id*. Washington most commonly follows the view that "precludes profile testimony because of its relative lack of probative value when compared to the danger of its unfair prejudice." *Id*. at 497 (citing *Avendano-Lopez*, 79 Wn. App. at 710-11).

24

No. 98928-1

There is a thin line between impermissible profile evidence and permissible expert testimony. For example, in *Avendano-Lopez*, an officer testified about the traits of a typical drug dealer. 79 Wn. App. at 710. Avendano-Lopez argued on appeal that the officer's testimony was more prejudicial than probative and that as a result, his conviction should be reversed. *Id*. The court held the officer's opinion was permissible expert opinion because it "did not identify any group as being more likely to commit drug offenses" and "it explained the arcane world of drug dealing and certain drug transactions" that was helpful to the jury. *Id*. at 711. Furthermore, the court reasoned that because Avendano-Lopez's attorney used the officer's testimony to his advantage by distinguishing Avendano-Lopez from typical drug dealers through his cross-examination of the officer, he could not argue that the officer's testimony was prejudicial error. *Id*.

In contrast, in *Crow*, an officer testified that the defendant was in possession of a gun when he was arrested. 8 Wn. App. 2d at 501. The State then leveraged this officer's testimony to connect it to "expert police officer testimony that the majority of disqualified persons apprehended with a firearm have a stolen firearm." *Id*. at 501-02. The State also used Crow's behavior during the arrest to bolster expert testimony "that most or a high percentage of firearms in the hands of a disqualified person are stolen firearms." *Id*. at 502. The Court of Appeals concluded the State had attempted to convict Crow through using characteristics of guilty people. *Id*. The State used the testimony of the officer and expert testimony as substantive evidence through its closing argument, which likely affected the jury's decision to convict Crow. *Id*. *Crow*, distinguishing itself

25

No. 98928-1

from *Avendano-Lopez*, concluded that "[t]he State should not be free to present profile testimony in the guise of background evidence." *Id*. at 503.

On the issue of ineffective assistance of counsel, the State, in *Crow*, argued that defense counsel had strategically chosen to not object when an officer testified about his knowledge of whether Crow knew the firearm was stolen to emphasize the State's lack of evidence. *Id*. at 509. The court disagreed and concluded no reasonable trial strategy explained why counsel had failed to object to profile evidence. It reasoned that the officer's testimony presented additional proof that Crow should have known the gun to be stolen. It held that counsel's actions were unreasonable. *Id*. at 510.

The State asserts that because McFadden's decision not to object was a legitimate trial strategy, *Crow* and the present case are distinguishable. According to the State, the difference between testimony in *Crow* and the testimony in this case is significant because the *Crow* defendant had been charged with possession of a stolen gun and the officers had provided improper profile testimony. Specifically, the officers in that case improperly testified that the majority of people who had access to guns "while not having the right to do so possess[ed] stolen firearms." Suppl. Br. of Resp't at 14-15 n.5; *see also Crow*, 8 Wn. App. 2d at 501-02.

In our view, this case is closer to *Crow*. As in *Crow*, Vargas's testimony about the tactical vest was not limited to background evidence. The State presented the testimony of Vargas, Martin, and Babbish to connect Vazquez to the room where she was allegedly selling methamphetamine and where the vest was found. The State then linked this

26

No. 98928-1

evidence with Vargas's testimony to show the purpose of the vest was to burglarize and steal narcotics. This testimony did not relate to the common behavior of individuals selling drugs, such as the presence of scales, cash, guns, and ledgers might. Rather, it was offered to demonstrate that people who possess such vests are generally using the vests to commit burglary and to steal drugs. Vazquez was not charged with burglary or theft of narcotics, and this evidence was not relevant to the charges against Vazquez and was highly prejudicial.

McFadden should have objected to this testimony because it was highly prejudicial, was irrelevant to any issue in the case, and is impermissible profile evidence. The purpose of the police vest was not at issue and did not make the "determination of the action more probable or less probable than it would be without the evidence." ER 401.

IV. <u>Prejudice</u>

The State contends that even if some of McFadden's objections to some of the evidence would have been successful, Vazquez does not show she was prejudiced by the deficient conduct, that is, a reasonable probability that McFadden's objections would have changed the result of Vazquez's guilty verdict. *Estes*, 188 Wn.2d at 458; *see also Strickland*, 466 U.S. at 696.

Based on the charges, the State was required to prove that Vazquez controlled and intended to sell the methamphetamine that was found in the pillowcase, that she controlled the dwelling where drugs were being sold, and that drug paraphernalia found

27

in the home belonged to Vazquez. Vazquez points to the following evidence to demonstrate the weakness of the State's case: (1) Fitzhugh testified that Vazquez stayed at the house infrequently and did not pay rent, (2) Babbish testified that she had only been at the Clarkston house once and was not aware if Vazquez was living there, (3) although Vazquez testified she used drugs when she was at the house, she stated that the room where drugs were found was not her bedroom and, instead, was considered a "flop" room, (4) Vazquez did not have a key to the room or the house, and (5) none of the police officers who testified witnessed Vazquez selling drugs. Vazquez asserts that Babbish's and Fitzhugh's testimony was central to the State's case because their testimony connected Vazquez to the bedroom and Babbish's testimony connected Vazquez to the access and sale of drugs. Vazquez claims that but for McFadden's deficient performance, allowing the jury to rely on inadmissible and prejudicial allegations, the outcome would likely have been different.

*Strickland*'s test for prejudice "'is ultimately concerned with "the fundamental fairness of the proceeding whose result is being challenged."'" *Lopez*, 190 Wn.2d at 124 (quoting *In re Pers. Restraint of Crace*, 174 Wn.2d 835, 844, 280 P.3d 1102 (2012) (quoting *Strickland*, 466 U.S. at 696)). "'It is . . . impossible to "exhaustively define the obligations of counsel []or form a checklist for judicial evaluation of attorney performance."'" *Id*. at 115 (quoting *In re Pers. Restraint of Yung-Cheng Tsai*, 183 Wn.2d 91, 99-100, 351 P.3d 138 (2015) (quoting *Strickland*, 466 U.S. at 688)). "Nevertheless, effective representation 'entails certain basic duties,' such as '. . . the

28

No. 98928-1

overarching duty to advocate the defendant's cause. . . . Counsel also has a duty to bring to bear such skill and knowledge as will render the trial a reliable adversarial testing process.'" *Tsai*, 183 Wn.2d at 100 (quoting *Strickland*, 466 U.S. at 688).

Whether each instance of deficient performance considered separately would independently meet the prejudice prong of *Strickland*, we conclude that the cumulative effect of counsel's subpar performance likely affected the outcome of the case. Admissible testimony showed that the Clarkston house was a gathering place for drug addicts and drug purchasers. At the time the police served the warrant and searched the premise there were multiple people staying at the house. While items belonging to Vazquez were found in the bedroom where the drugs were found, there was strong evidence that she shared the room with multiple other people. Moreover, the State did not produce evidence that Vazquez owned the house, and the evidence that she controlled the house and the activities within was thin and largely based on inadmissible evidence. Vazquez was not found with the drugs on her person, and much of the evidence against Vazquez related to drug sales came from hearsay statements that she sold drugs and from her prior drug convictions, all of which were inadmissible.

Adding to the prejudice of other inadmissible testimony, the State elicited testimony that its witnesses, Babbish and Fitzhugh, had been threatened. Even if that testimony might have been admissible as impeachment by the State of its own witnesses, there was no limiting instruction and the testimony clearly prejudiced Vazquez when, after trial, jurors asked the court about threats to their well-being. Finally, profiling

29

No. 98928-1

testimony regarding the purpose of the tactical vest found in the bedroom where the drugs were found, coupled with the hearsay about Vazquez's sale of drugs and threats to witnesses completed a picture of a dangerous drug dealer.[3]

CONCLUSION

We hold that McFadden's failure to object to inadmissible evidence fell below the standard for effective performance and that but for McFadden's lack of objections, there is a reasonable probability that the outcome of the trial would have been different. We reverse the Court of Appeals and remand for further proceedings.

---

[3] After we granted review of Vazquez's initial petition, she moved for additional relief under *State v. Blake*, 197 Wn.2d 170, 481 P.3d 521 (2021). That motion was passed to the merits. Because we reverse Vazquez's convictions and remand for further proceedings, the issue is moot.

No. 98928-1

_____
Madsen, J.

WE CONCUR:


_____          _____


Johnson, J.                                           Yu, J.


Owens, J.                                             Montoya-Lewis, J.


Stephens, J.                                          Whitener, J.

31

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

*State v. Vazquez*, No. 98928-1 (González, C.J., dissenting)

No. 98928-1

GONZÁLEZ, C.J. (dissenting)—This would have been a difficult case for any defense attorney. The State had considerable evidence that Jessica Vazquez possessed methamphetamine intending to sell it, that Vazquez possessed drug paraphernalia, and that the house itself was being maintained for drug use. Perhaps recognizing this, Vazquez herself reached out to her attorney and offered to plead guilty, so long as the State agreed to defer sentencing for two weeks to allow time for her to have one last visit with her children before she was taken to prison. The State balked at delaying sentencing, and two months later the case went to trial.

But while the evidence Vazquez had possessed drug paraphernalia and sold methamphetamine was strong, the evidence that Vazquez *herself* was maintaining the house for drug use was not. Counsel made the strategic choice to focus her defense on the weakest charge, framing the story as one where Vazquez was merely a drug user who occasionally stayed at that house and that police had fixated on her unfairly. That theory works only if the defense concedes—as it

1

*State v. Vazquez*, No. 98928-1 (González, C.J., dissenting)

did—that Vazquez has a history of drug use, which was vividly shown by her criminal history and much of the evidence she now challenges. Given the overwhelming evidence that Vazquez had sold drugs and possessed paraphernalia, and the very limited evidence that she had control over the house, this was a reasonable defense theory. Allowing her client's criminal history to be entered into evidence in support of that strategy was not, under these facts, ineffective assistance of counsel. *See State v. Cienfuegos*, 144 Wn.2d 222, 227, 25 P.3d 1011 (2001) ("'Deficient performance is not shown by matters that go to trial strategy or tactics.'" (quoting *State v. Hendrickson*, 129 Wn.2d 61, 77-78, 917 P.2d 563 (1996))).[1]

For similar reasons, counsel's decision not to object to Christine Babbish's testimony that Vazquez had sold small quantities of drugs was not ineffective. This has to be seen in context. Babbish testified that she and Vazquez had smoked methamphetamine that Vazquez provided that night. This was plainly admissible. Babbish's testimony that Vazquez was a small-time drug dealer was consistent with the overall defense strategy of vigorously attacking the weakest charge on the

---

[1] This is especially true if Vazquez had insisted on her right to testify. Given that several of her crimes would have been admissible as crimes of dishonesty as soon as Vazquez took the stand, *see* ER 609, admitting her criminal history was a reasonable defense strategy to show the defense had nothing to hide. Of course, if there is evidence outside the record that would bear on whether Vazquez received ineffective assistance of counsel, she is free to raise it in a personal restraint petition. *See State v. Grier*, 171 Wn.2d 17, 29, 246 P.3d 1260 (2011) (citing *State v. McFarland*, 127 Wn.2d 322, 335, 899 P.2d 1251 (1995)).

2

*State v. Vazquez*, No. 98928-1 (González, C.J., dissenting)

theory that the State had focused on the wrong defendant for the charge of maintaining a drug house. Similarly, not objecting to the officers' hearsay testimony that suggested Vazquez sold drugs was consistent with a reasonable defense strategy that officers had tunnel vision in their focus on her. I can find no fault in the officers' testimony about all of the things they found in the house that supported the State's theory that it was being maintained for the use and sale of drugs.

Like the majority, I am troubled by the fact that the State elicited testimony that its witnesses had been threatened and that the elicited testimony caused the jurors concern about their own safety. I share the majority's concern that it is improper to bolster witnesses' credibility in anticipation of impeachment. *See State v. Bourgeois*, 133 Wn.2d 389, 400, 945 P.2d 1120 (1997) (quoting 1 MCCORMICK ON EVIDENCE § 47, at 172 (John W. Strong ed., 4th ed.1992)).

But assuming without deciding that the failure to object was deficient, Vazquez still must show a "'reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.'" *In re Pers. Restraint of Crace*, 174 Wn.2d 835, 840, 280 P.3d 1102 (2012) (quoting *Strickland v. Washington*, 466 U.S. 668, 694, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984)). Vazquez has not met this standard. Both witnesses testified

3

*State v. Vazquez*, No. 98928-1 (González, C.J., dissenting)

that the threats did not come from Vazquez. Given the overwhelming properly admitted evidence, the slight chance that this testimony might have swayed the jury is not enough to establish the requisite prejudice for relief on an ineffective assistance of counsel claim.

I respectfully dissent.

_____
González, C.J.

_____
Gordon McCloud, J.