# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

# DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 57230-3-II |
| Respondent, | |
| v. | UNPUBLISHED OPINION |
| RONALD DEAN OLSON, | |
| Appellant. | |

MAXA, J. – Ronald Olson appeals his convictions of three counts of felony harassment. The convictions arose out of an incident where Olson fired multiple shots from a semi-automatic rifle while yelling threats to three people who lived next door. At trial, defense counsel did not object to testimony from Olson's other next-door neighbor regarding a similar incident that occurred almost a year later and other disparaging information about Olson. Olson argues that defense counsel was ineffective for failing to object to this testimony.

We hold that even assuming that defense counsel's failure to object to this testimony constituted deficient performance, Olson cannot show prejudice. Accordingly, we affirm Olson's convictions.

## FACTS

*Background*

On August 14, 2020, Olson yelled threats at three people who lived next door to him: Timothy Binder, Sandra Peterson-Binder, and Brendan Peterson. Olson also fired multiple shots

from a semi-automatic rifle. Officers took Olson into custody after finding him standing naked in his driveway and smelling of alcohol.

The State charged Olson with three counts of felony harassment.

*Trial Court Proceedings*

Before trial, the State filed numerous motions in limine, including a boilerplate motion to exclude any character evidence pertaining to the defendant. In response, defense counsel stated that he would not object to the testimony of Theresa Bogue, the other next-door neighbor of Olson, about a similar harassment incident that occurred almost a year after the incident giving rise to the charges. Defense counsel acknowledged that this evidence would be subject to ER 404(b), but stated that if the State did not elicit this evidence, he would.

Binder testified that he was Olson's next-door neighbor. He stated that on the day of the incident he arrived home from work when "all hell [broke] loose." 1 Report of Proceedings (RP) at 52. Olson was screaming and yelling, calling Binder names, and fired 15 rounds from his semi-automatic rifle. Binder testified that among other things, Olson yelled "I'm going to blow your head off." 1 RP at 58.

Peterson, Peterson-Binder's son, arrived home a short time later. Peterson testified that on his way home from work he heard gunshots from a rifle coming at him as he passed Olson's property. Once he arrived home, Peterson heard Olson yell "I'm going to get you all" and "come out where I could see you". 1 RP at 75.

Peterson-Binder testified that she headed home after receiving text messages from her husband about the situation. After she arrived home, she heard random gunshots and heard Olson yell, "I'm going to blow you all up." 1 RP at 68. Peterson-Binder testified that she retreated to the garage and called 911 three times.

A law enforcement officer testified that he found shell casings in the roadway in front of Olson's trailer and that they appeared to be fresh. Another officer photographed and collected shell casings from the road and from the property by the trailer. He also collected a semi-automatic rifle that was located on a stump along a pathway leading to Olson's trailer. The rifle's safety was off and a live round was in the chamber.

Bogue testified that she was Olson's next-door neighbor to the north. She testified that one afternoon in 2020 she heard Olson screaming and yelling that he was going to "kill them all." 1 RP at 31. She then reported the incident to law enforcement. Bogue testified that there had been discontent between Olson and the Binder family for around 18 years.

Bogue then testified about an incident with Olson in July 2021. Olson screamed at her and threatened to rape her and kill her dogs. Bogue stated that she took Olson's threats seriously because

> [Olson] tends to approach women when he's naked, and he has stalked my daughter before, and in the incident between my neighbors when my husband was in the hospital, he has guns and he has - he shoots them off, and people have reported that he has actually shot them with a BB gun when they're on his property in the river.

1 RP at 34. Defense counsel did not object to any of this testimony.

Bogue also testified about the condition of Olson's property. She stated that the property did not meet county codes, has lots of vehicles on it, and has mounds of human waste because Olson does not have a septic system. The State introduced into evidence photographs of Olson's property that showed garbage everywhere. Defense counsel did not object to this testimony.

On cross examination, defense counsel continued to question Bogue about the July 2021 incident. In his questioning, defense counsel reiterated that Olson was yelling and screaming and saying things like "I'll kill you." 1 RP at 41. In response to further questioning by defense counsel, Bogue testified that Olson threatened to blow her head off.

On re-direct, the prosecutor asked Bogue to tell the jury exactly what happened during the July 2021 incident. Bogue testified that she went outside and heard Olson yelling that he was going to kill her and her dogs. She also testified that Olson said he was going to rape her. Bogue stated that her phones were out so she went to town to report what happened to the police. After she returned, Bogue's neighbors came over and told her that Olson was threatening to blow her head off. Defense counsel did not object to this testimony.

During closing argument, defense counsel emphasized that the jurors must independently weigh the evidence to determine whether the State has met its burden to prove each of the elements of the crime beyond a reasonable doubt. Defense counsel did not mention any of the trial testimony. Specifically, defense counsel did not refer to Bogue's testimony about the July 2021 incident.

The jury found Olson guilty of three counts of felony harassment. Olson appeals his convictions.

## ANALYSIS

### A.    LEGAL PRINCIPLES

The Sixth Amendment to the United States Constitution and article I, section 22 of the Washington Constitution guarantee criminal defendants the right to effective assistance of counsel. *State v. Vazquez*, 198 Wn.2d 239, 247, 494 P.3d 424 (2021). To prevail on an ineffective assistance of counsel claim, a defendant must show both that defense counsel's performance was deficient and the deficient performance prejudiced the defendant. *Id.* at 247-48.

Representation is deficient if, after considering all the circumstances, it falls below an objective standard of reasonableness. *Id.* To rebut the strong presumption that counsel's

performance was effective, the defendant bears the burden of establishing the absence of any legitimate strategic or tactical reason explaining counsel's conduct. *Id.* at 248.

Prejudice exists if there is a reasonable probability that except for defense counsel's deficient performance, the result of the case would have been different. *Id.* " 'A reasonable probability is a probability sufficient to undermine confidence in the outcome.' " *Id.* (quoting *Strickland v. Washington*, 466 U.S. 668, 694, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984)). We consider the prejudicial effect of defense counsel's deficient performance in light of the evidence in the record. *State v. Hendrickson*, 129 Wn.2d 61, 80, 917 P.2d 563 (1996). If the remaining evidence powerfully supports a finding of guilt, the failure to object did not prejudice the defendant. *Id.*

B.      LACK OF PREJUDICE

Olson argues that defense counsel was ineffective for failing to object to Bogue's testimony about a similar event that happened almost a year later and Olson's other conduct unrelated to the charged offense. We assume without deciding that the failure to object to this evidence constituted deficient performance, but we reject Olson's ineffective assistance of counsel claim because Olson cannot show prejudice.

Even without Bogue's testimony regarding the July 2021 incident, the record overwhelmingly supports a conviction for all three counts of felony harassment. Binder, Peterson-Binder, and Peterson all testified that they heard gunfire and Olson threatening to kill them. Bogue provided independent corroboration of Olson's harassment, testifying that she heard Olson yell that he would "kill them all." 1 RP at 31. Officers presented evidence of shell casings in the road in front of Olson's residence and a loaded rifle on the property. Olson presented no conflicting evidence and provided no reason to doubt the credibility of any of the

witnesses. In light of this substantial evidence, Olson cannot establish that there is a reasonable probability that he would have been acquitted in the absence of Bogue's testimony.

We conclude that defense counsel's failure to object did not prejudice Olson. Accordingly, we hold that Olson's ineffective assistance of counsel claim fails.

CONCLUSION

We affirm Olson's convictions.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____
MAXA, J.

We concur:

_____
CRUSER, A.C.J.

_____
VELJACIC, J.