[No. 29220. Department One. April 12, 1944.]

THE STATE OF WASHINGTON, *Respondent*, v. EVAN DAVIS, *Appellant*.[1]

[1]Reported in 147 P. (2d) 940.

*Warren Hardy* and *Grant L. Parrish,* for appellant.

*Max Church* and *D. E. Harper,* for respondent.

JEFFERS, J.—Defendant, Evan Davis, was, by the first count of an information filed by the prosecuting attorney of Clallam county, on July 20, 1943, charged with the crime of carnally knowing and abusing a female child under the age of fifteen years, not his wife. The information further charged the crime to have been committed in Clallam county, on or about July 17, 1943. By the second count of the information, defendant was charged with the crime of incest. Under this count it is alleged that on or about July 17, 1943, in Clallam county, defendant had sexual intercourse with his daughter, who, for obvious reasons, will be hereinafter referred to as the prosecuting witness, and not by name.

Defendant entered a plea of not guilty to each of the above counts. The cause came on for hearing before the court and jury, and thereafter, on September 18, 1943, the jury returned a verdict of guilty as charged on each count of the information. A motion for new trial was timely filed, and by the court denied. On September 25, 1943, defendant filed a motion for the appointment of a commission to examine the mental condition of the prosecuting witness. This motion was denied. On September 25th, defendant was brought before the court, and judgment and sentence was entered on the verdict. Defendant has appealed from such judgment.

Both counts in the information are based upon an alleged act of intercourse claimed to have taken place between appellant and his daughter on or about July 17, 1943.

Appellant, while on the witness stand, testified that the prosecuting witness was his daughter, and that she was fourteen years of age at the time of the alleged act. No

question is raised but that the alleged act, if committed, was committed in Clallam county, Washington.

The above facts having been admitted, it remained for the state to establish that an act of sexual intercourse took place between appellant and the prosecuting witness, on or about July 17, 1943, and within three years next preceding the filing of the information.

Appellant, who was about thirty-five years of age, and his family, consisting of his wife, the complaining witness, and two sons, both younger than his daughter, lived on a small farm in what is known as Eden valley, a few miles from Port Angeles. The prosecuting witness had completed the eighth grade, and was ready to enter high school. After school closed, she went to visit her grandparents, Mrs. Davis's mother and father, at Wapato. She returned home by bus on the evening of Thursday, July 15th, and communicated to her mother that the grandfather was in very poor health. The next morning, Friday, July 16th, Mrs. Davis and the two boys boarded the bus for Wapato, leaving the prosecuting witness and her father alone on the farm. It appears without dispute that the girl had never theretofore been left alone with her father.

There is evidence, as shown by the testimony of the prosecuting witness, if believed by the jury, to establish that, on the night of Friday, July 16th, appellant carried the girl from her bed to his bed, and there had sexual intercourse with her.

It clearly appears from the testimony of this young girl that she was entirely unfamiliar with sex matters, and the names and terms commonly applied to such matters. It is very evident, from her examination and testimony, that she was reluctant to refer to these matters, although her testimony as to the act was not shaken by cross-examination.

The first assignment of error is that the court erred in permitting leading questions to be asked the prosecuting witness to bring out evidence tending to show sexual penetration.

We appreciate the general rule relative to the asking of leading questions, but there are exceptions to this rule. Much discretion is also vested in the trial court in permitting leading questions to be asked. Wharton's Criminal Evidence (11th ed.), vol. 3, p. 2136, § 1270, has the following to say on this matter:

"Leading questions are also permissible in the examination of children unaccustomed to court proceedings, and in the examination of a young, uneducated, and unsophisticated girl testifying to the details of a rape."

We will not set out the questions to which objections were made, nor the answers thereto, but we are of the opinion there can be no doubt that the answers of the prosecuting witness, if believed by the jury, sufficiently showed sexual penetration. It may be admitted that the questions asked, to which objections were made, were leading.

In *State v. Tenney*, 137 Wash. 47, 241 Pac. 669, the trial court permitted the prosecuting attorney to ask the prosecuting witness almost the identical question propounded to the prosecuting witness in this case. Objection was made to the question and error assigned thereon. In commenting on this matter, this court stated:

"It is the rule that, with witnesses of tender years, wide latitude is allowed in examination of the witness, and we think it clear that the trial court did not abuse the discretion vested in it. *State v. Hill*, 45 Wash. 694, 89 Pac. 160; *State v. Hanson*, 133 Wash. 527, 234 Pac. 28."

We are satisfied that the trial court in the instant case, in permitting the state to ask the questions to which objection was made, did not abuse the discretion vested in it.

■ We shall next discuss assignments of error Nos. 2 and 5, as they are discussed together in appellant's brief. Assignment of error No. 2 is that the court erred in overruling appellant's challenge to the sufficiency of the evidence at the close of the state's case; and assignment No. 5 is that the court erred in refusing to grant appellant's motion for a new trial.

It is appellant's general contention that there was insufficient evidence to sustain a conviction on either count of the

information. While appellant admits that the law requiring corroboration of the testimony of a prosecuting witness has been abolished in this state, it seems to be his contention that the testimony of the prosecuting witness alone is not sufficient to sustain a verdict of guilty, where such testimony is inherently improbable, or is badly discredited.

We are unable to agree that the rule in this state is as contended for by appellant, regardless of what the rule may be in other jurisdictions to which counsel for appellant has called our attention. This matter of corroboration is specifically referred to and discussed in *State v. Morden,* 87 Wash. 465, 151 Pac. 832, a case decided after the repeal of the law requiring corroboration. The same argument was advanced in the cited case as is advanced by appellant. In the cited case we quoted with approval the following statement found in *State v. Conlin,* 45 Wash. 478, 88 Pac. 932:

" 'It is argued that the story of the prosecuting witness is improbable and uncorroborated. Her testimony was, however, direct and positive as to all the essential elements of the offense charged, *and if true it is sufficient to convict the appellant.* In such a case "this court cannot, without a usurpation of authority, hold that the evidence is insufficient to warrant a conviction." *State v. Fetterly,* 33 Wash. 599, 74 Pac. 810. Within the rule stated in the above case, and also in *State v. Roller,* 30 Wash. 692, 71 Pac. 718, it is not necessary that there shall be actual corroboration of the prosecutrix in such cases, since there is no statute requiring it. While it is true that certain corroborating circumstances were found in each of those cases, yet the actual rule there declared by the court is such that the uncorroborated testimony of the prosecutrix is sufficient if the jury find it to be true. Of its truth the jurors shall be the judges, and they shall apply the usual, necessary and proper tests to determine whether it is true or false.' " (Italics ours.)

The opinion continues:

"We prefer, however, to place our decision unequivocally upon the authority of the foregoing decisions [cases decided before the law required corroboration], to the effect that, at common law, corroboration was unnecessary. These

decisions were undoubtedly the occasion of the passage of the statute requiring corroboration. It is equally plain that, by repealing that statute, the legislature intended to restore the law to its former status."

The testimony of the prosecuting witness was sufficient, if believed by the jury, to establish each and every element of each of the crimes charged in the information, and such testimony was therefore sufficient, if believed by the jury, to sustain a conviction on each count charged.

The testimony also shows that on July 18th, the prosecuting witness ran away from home, going to the home of a neighbor named Mulford, where she made complaint. The girl was examined by Dr. Taylor on Monday, July 19th. The doctor testified, in part, that his examination showed that the whole vulva, which is the external opening of the female organ, was swollen, red, and congested. While the doctor further testified that from his examination he did not believe the girl had ever had a complete act of sexual intercourse, he also testified that he found contusions just inside the vulva.

Rem. Rev. Stat., § 2437 [P. C. § 9109], provides: "Any sexual penetration, however slight, is sufficient to complete sexual intercourse or carnal knowledge." See *State v. Snyder*, 199 Wash. 298, 91 P. (2d) 570.

Appellant denied that he had ever had intercourse with his daughter, or abused her in any way. He admitted, however, that she slept in his bed on the nights of July 16th and 17th, but denied that he forced her so to do. In order to show the improbability of his daughter's story, appellant introduced a letter written by her to her mother on July 17th, the day after the alleged act. This letter was not mailed. It appears to be the kind of a letter a girl of that age would write to her mother, but it made no mention of the fact that her father had molested her in any way. Testimony was also introduced to the effect that she appeared to act normally in every way on Friday before the alleged act and on Saturday, the following day. It is contended that she had ample opportunity on Saturday to make complaint, but that she did not do so.

We stated in *State v. Priest,* 132 Wash. 580, 232 Pac. 353:

"Want of complaint, if the offense itself be established, no more tends to exculpate him [the defendant] than it tends to exculpate every other person."

The mother testified that appellant had a great affection for his daughter, and she seemed to return this feeling.

It may also be stated here that, after complaint had been made, a state patrol officer, accompanied by the prosecuting witness, visited the Davis home and procured the sheets identified by the prosecuting witness as the ones that were on the bed on the night in question, and also procured the nightgown worn by the prosecuting witness that night. These exhibits had certain stains on them which, under the testimony of the prosecuting witness, made them material.

There was also the testimony of several witnesses as to the good reputation of appellant for decency and morality. The jury had all this testimony before it, and apparently believed that the story of the prosecuting witness was true.

We are of the opinion that the court did not err in refusing to sustain appellant's challenge to the sufficiency of the evidence, or in denying appellant's motion for new trial, based upon the same ground.

 It is contended that the trial court erred in refusing to reopen the case to permit appellant to introduce further testimony. It is admitted that this was a matter largely within the discretion of the court. This motion was made after the jury had retired to consider its verdict. The matter came up in the following manner: A Mrs. Johnson, whom counsel for appellant apparently did not know, approached him and told him that a Mrs. Hill, if called, would testify to certain statements made to her by the prosecuting witness. When interrogated as to who had told her what Mrs. Hill would testify to, Mrs. Johnson answered: "Mrs. Soule." Mrs. Soule is appellant's mother, and she had apparently been in attendance on the trial. The record shows that Mrs. Johnson was called by appellant, and allowed to make her statements to the court, we assume in the absence

of the jury. After argument by respective counsel, the court denied the motion.

From the record, we are unable to tell whether or not it appeared from Mrs. Johnson's testimony just when the statements claimed to have been made by the prosecuting witness to Mrs. Hill had been made, but the character of such purported statements was such that we are satisfied the trial court did not abuse its discretion in denying the motion. It also seems apparent that Mrs. Soule, appellant's mother, who was present in the court room during the trial, knew about such statements and apparently did not think them sufficiently material to communicate the matter to counsel.

In addition to what is stated above, there are some statements claimed to have been made by the prosecuting witness which were set out as a reason for granting a new trial, and also as a reason for granting appellant's motion to have the court appoint a commissioner to examine into her sanity. It appeared that these statements were made to Mrs. Hill some eight or nine years before the time of the alleged crime, and when this girl was about five years of age.

The statements to which it is claimed Mrs. Hill would have testified had no relation to the charges here made, and at most were fanciful stories that might be told by an imaginative child, and were so remote that we fail to see where they could have had any bearing on the issues here presented. Certainly the statements claimed to have been made would have been admissible only for the purpose of affecting the credibility of the witness, and we have serious doubts that the claimed statements of a five year old child would be admissible for that purpose, when attempted to be introduced some eight or nine years after they were made, if they were made.

We are satisfied that the court, in refusing to reopen the case, or in refusing to grant a new trial to permit appellant to introduce the statements claimed to have been made by the prosecuting witness, did not abuse the discretion vested in it.

■ It is further contended the court erred in refusing to appoint a commission to inquire into the sanity of the prosecuting witness. This motion was not made until after the verdict of the jury had been returned. No authority is cited for such a proceeding. No contention was made during the trial, and no testimony was offered, to show that this girl did not have the intelligence of the average girl of her age.

We have carefully read the record, and we are convinced, as was the trial court, who saw the girl and heard her testify, that nothing was shown to justify the trial court in appointing a commission to inquire into the sanity of the prosecuting witness.

We fully realize the seriousness of the charges made against appellant, and we also appreciate how difficult it is to defend against the charges made, and, having these things in mind, we have given close consideration to the claimed errors in the record. We are satisfied that the appellant had a fair trial in every respect.

Finding no error in the record, the judgment of the trial court must be, and is, affirmed.

SIMPSON, C. J., BEALS, STEINERT, and GRADY, JJ., concur.

---

May 24, 1944. Petition for rehearing denied.