

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | No. 38523-0-III |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| JEREMY DAVID OWNBY, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | |

STAAB, J. — Jeremy Ownby appeals from two convictions for first degree rape of a child and two convictions for first degree child molestation. On appeal, Ownby argues that his attorney was constitutionally ineffective for failing to object to certain evidence and arguments during trial. Specifically, Ownby claims his attorney should have objected to evidence of Ownby's sexual relationship with his girlfriend, the mother of the child victim, and the State's reference to this evidence in closing. In addition, Ownby claims the State referenced facts outside the evidence, and his attorney was ineffective for failing to object. In his statement of additional grounds, Ownby challenges the prosecutor's unchallenged use of leading questions during direct examination of the victim. Finally, Ownby challenges several conditions of community custody imposed as part of his sentence.

We conclude that Ownby has failed to establish that his attorney was ineffective or that the prosecutor committed misconduct. We also reject his other evidentiary challenges. We accept the State's concession on two community custody conditions and find that recent statutory amendments apply to a third condition. We affirm Ownby's convictions and remand for the trial court to strike three of his community custody conditions.

BACKGROUND

1.    ALLEGATIONS

MB and TB were married for 10 years and had two children, HLB and NB. The couple eventually divorced, and under the divorce settlement, they share custody of their children. Ownby moved in with TB shortly after they began dating. TB worked 12 to 16-hour shifts as a certified nursing assistant. During the weeks when the children were residing with TB, Ownby would watch them while she was at work.

About a year after Ownby moved in, HLB and NB ran away from TB's house because they were afraid of Ownby. They called their father from a neighbor's house. The father called police, who arrived and returned the children to TB's house. Shortly thereafter, due to ongoing concerns of physical abuse, MB obtained full custody of the children.

After MB obtained custody of his children, HLB told her father that Ownby had sexually abused her. HLB's allegations were reported to child protective services (CPS), and CPS referred the case to law enforcement.

The State charged Ownby with two counts of first degree rape of a child and two counts of first degree child molestation. Ownby's first trial resulted in a hung jury, so the case was retried.

2.      SECOND TRIAL

"Family quarrels are bitter things. They don't go according to [the] rules. They're not like aches or wounds. They're more like splits in the skin that won't heal because there is not enough material." Rep. of Proc. (RP) at 356.[1] Defense counsel began his opening statement at Ownby's second trial with this quote from F. Scott Fitzgerald, clearly setting a tone for how he intended to frame the case.

At trial, defense counsel artfully framed a theory of the case for the jury that Ownby had been caught in the middle of a child custody dispute. He argued that the children's father, MB had cleverly constructed the allegations as part of an effort to obtain custody of HLB and NB. According to defense counsel, Ownby, far from being the perpetrator, was the real victim at the center of this child custody dispute. As a result,

---

[1] The cite "RP" without a date refers to the RPs from Ownby's most recent trial. When citing to any other RPs, the date of the hearing is included.

3

much of the evidence at Ownby's trial centered not only on his sexual contact with HLB but also on the general family dynamics and other domestic issues.

A CPS worker assigned to HLB and NB's case testified at trial. She testified that during the time MB and TB had split custody of the children, and just before the children ran away, she received an intake containing allegations that Ownby had physically abused NB. A subsequent investigation found a bruise on NB's head "consistent with a high-force blow." RP at 532-34. The injury was reportedly inflicted by Ownby. Although the investigation found a risk, no findings were ever reported and no legal proceedings resulted.

Ownby also testified regarding the CPS investigation. He denied causing the bruise on NB's head but admitted telling CPS that NB had scraped his lower back when he fell out of the bathtub. Ownby also stated CPS had "cleared [him] of the accusations" of physical abuse. RP at 570. During cross-examination Ownby struggled to answer leading questions without providing further explanation.

> [PROSECUTOR]:   And you heard [the CPS worker] testify that the bruising CPS was concerned about was a bruise on the head, correct?
>
> [OWNBY]:   Um, she said that but that is incorrect.
>
> Q.   Mr. Ownby, did [the CPS worker] testify that the CPS investigator—
>
> A.   That's—was her words, yes.
>
> Q.   And that CPS found that it was part—a result of a high-force blow, correct?
>
> A.   Possibly because of maybe falling out of the tub.

4

Q.     Sir—again, Mr. Ownby, did [the CPS worker] testify that the bruise was caused by a high-force blow?

A.     That's what she said

RP at 576-77.

TB testified that she often worked long hours while Ownby stayed with her children. In response to the State's questions on direct examination, TB testified that Ownby had a strong desire for sex and she was often too tired or unavailable to accommodate this desire. In response to a relevance objection, the State explained that the testimony demonstrated opportunity and motive to rape HLB. The court initially sustained the objection, but allowed the State to set a foundation. The State continued to ask questions about the sexual history between TB and Ownby:

Q. . . . [H]ow often did you and Mr. Ownby have sex?

A. A lot.

Q. And were you always wanting to have sex with Mr. Ownby?

A. No.

Q. Did you ever try to tell him no?

A. Yes.

Q. What happened when you told him no?

A. He would get angry and he would say things.

Q. What types of things would he say?

A. One time when we were in the bath—bathtub, we were taking a bath together. And I wasn't feeling good, hypoglycemic. And I was feeling nauseous because I needed to eat, and the hot heat from the tub was making

it worse.  He wanted to.  I didn't want to.  And he got angry, and he said that he could drown me if he wanted to.

      [DEFENSE COUNSEL]: Objection, your Honor.

      THE COURT: And I'm going to sustain the objection and—

      [DEFENSE COUNSEL]: Ask to strike.

      THE COURT: —instruct the jury to disregard the last answer.

Q. . . . [D]id you ever give in to Mr. Ownby when he wanted to have sex?

A. Yes.

Q. And when you were working with these long shifts, were you available for that sexual relationship with Mr. Ownby?

A. No.

RP at 372-73.  This testimony was similar to TB's testimony at Ownby's first trial.  RP (March 25, 2021) at 65-66.

HLB testified that Ownby sexually abused her on several occasions beginning while she was in fourth grade and continuing until MB obtained full custody of her and NB.  On one occasion, HLB said that while Ownby was raping her, he told her that she "needed to woman up and be more like [her] mom."  RP at 412.

HLB was 12 years old at the time of trial.  During its direct examination of HLB, the State regularly used leading questions to elicit testimony.

*Jury Instructions and Closing Argument*

The State's case was based on the credibility of the witnesses, and particularly the victim, HLB.  During closing argument, defense counsel pointed out that there was a lack

6

of "gradual build-up or grooming or anything like that." RP at 624. He argued that this,

combined with the family history, made it plausible that the accusations against Ownby

were fabricated. Defense counsel also argued that the parents, TB and MB, had been

slinging allegations back and forth, noting that the social worker had testified that prior

abuse and neglect allegations were "unfounded." RP at 632.

During its rebuttal argument, the State addressed defense counsel's argument

regarding the CPS investigation, reminding the jury that the investigation result was not

unfounded but rather resulted in no finding:

> We know that CPS had already been involved. We know that the children
> had run away. We know that [NB] had bruises on him. To be very clear,
> the bruises were not part of a—it was part of a[n] . . . investigation. And
> that does not result in a finding, founded or unfounded. What they did
> determine is the bruises were the result of a high-force blow and that the
> accusation was against Mr. Ownby. So they're not just unfounded findings
> about nothing. This is a CPS investigation into physical abuse that turns
> into more.

RP at 636. The State also challenged Ownby's version of events regarding the

investigation:

> There's a presumption of innocence in this case, as in all criminal cases, but
> there's not a presumption of credibility. The defendant is presumed
> innocent but he is not presumed credible. His statements must be weighed
> in the same way as everyone else's. What he was willing to say on the
> stand, what he fought with the state about, what he stated to [defense
> counsel] after hearing testimony from CPS, he couldn't admit on the stand

that he'd heard it and that he understood what that testimony was instead choosing to argue, "Well, it was—it was a bathtub." Well, we know that's not what happened.

RP at 641.

Additionally, the State argued that TB's testimony regarding her sexual relationship with Ownby showed that Ownby had a motive for committing the crimes:

And grooming, you heard at first [HLB] liked Mr. Ownby, she called him Daddy, she snuggled with him on the couch, she watched movies with him, and she got more and more comfortable with him until he started raping her. There was a progression. It wasn't just automatic, we go from zero to 60. And on the other side of that coin we hear from [TB], who indicates that Mr. Ownby constantly wanted sex, was particularly needy, demanding it of her over and over again when she didn't want it. And she was unavailable to have sex with Mr. Ownby regularly. Because of the work that she did, because of working overnight and being exhausted all the time, she was unavailable. *And so Ownby had to get it somewhere, and he chose [HLB] to fill that need for him.*

RP at 634-35 (emphasis added).

The jury found Ownby guilty of all charges, and the trial court sentenced him to an indeterminate sentence of 300 months to life. Ownby was also sentenced to community custody. Ownby's conditions of community custody included requirements that Ownby pay supervision fees as determined by the Department of Corrections, complete substance

8

abuse evaluation and treatment, and not engage in "a romantic or dating or sexual relationship without permission from [his] SOTP[2] Therapist and [his] CCO." CP at 365.

Ownby appeals.

## ANALYSIS

1. TESTIMONY ABOUT SEXUAL HISTORY WITH TB

Ownby maintains that TB's testimony about their sexual relationship was inadmissible, his trial attorney was constitutionally ineffective for failing to object to the testimony, and the State committed misconduct by referring to the unchallenged evidence in rebuttal closing argument. The State maintains that the evidence demonstrates motive and opportunity and was therefore admissible. Ownby's claims fail because he cannot demonstrate either deficient performance or prejudice.

Criminal defendants have a constitutionally guaranteed right to effective assistance of counsel. U.S. CONST. amend. VI; WASH. CONST. art. I, § 22; *State v. Lopez*, 190 Wn.2d 104, 115, 410 P.3d 1117 (2018). A claim of ineffective assistance of counsel is an issue of constitutional magnitude that may be considered for the first time on appeal. *State v. Nichols*, 161 Wn.2d 1, 9, 162 P.3d 1122 (2007). Claims of ineffective assistance of counsel are reviewed de novo. *State v. White*, 80 Wn. App. 406, 410, 907 P.2d 310 (1995).

---

[2] Sex Offender Treatment Program.

9

A defendant bears the burden of showing (1) defense counsel's performance fell below an objective standard of reasonableness based on consideration of all the circumstances and, if so, (2) that there is a reasonable probability that but for counsel's poor performance, the outcome of the proceedings would have been different. *State v. McFarland*, 127 Wn.2d 322, 334-35, 899 P.2d 1251 (1995). If either element is not satisfied, the inquiry ends. *State v. Kyllo*, 166 Wn.2d 856, 862, 215 P.3d 177 (2009).

In reviewing the record for deficiency, there is a strong presumption that counsel's performance was reasonable. *McFarland*, 127 Wn.2d at 335. The burden is on a defendant alleging ineffective assistance of counsel to show deficient representation. *Id.*. The reasonableness of counsel's performance is to be evaluated from counsel's perspective at the time of the alleged error and in light of all the circumstances. *Kimmelman v. Morrison*, 477 U.S. 365, 384, 106 S. Ct. 2574, 91 L. Ed. 2d 305 (1986). "When counsel's conduct can be characterized as legitimate trial strategy or tactics, performance is not deficient." *Kyllo*, 166 Wn.2d at 863.

The decision on when and how to object to evidence is a "classic example" of a trial tactic. *State v. Vazquez*, 198 Wn.2d 239, 248, 494 P.3d 424 (2021). Based on the nature of the evidence and its likelihood of being admitted, trial counsel often makes a calculated decision that an objection causes more harm than good. *See Id.* (citing *State v. Crow*, 8 Wn. App. 2d 480, 508, 438 P.3d 541 (2019)). In order to show that a decision to refrain from objecting rises to the level of deficient performance, a defendant must not

10

only show that an objection would likely be successful, but also show that the outcome of the trial would have been different without the inadmissible evidence. *Id*. at 248-49.

In this case, Ownby is unable to show that the failure to object was anything other than tactical. We note that the State introduced similar evidence in the first trial, so it was not surprising that it would seek to admit the evidence in the second trial. Nevertheless, Ownby did not move in limine to exclude the evidence. During introduction of the testimony at the second trial, Ownby's attorney objected on two occasions, and both objections were sustained. However, the trial court allowed the State to continue the line of questioning to see if the State could demonstrate opportunity and motive to commit the crime.

The unchallenged testimony was that TB and Ownby had sex frequently. Due to her work, TB was not always available for sex. When TB did not want to have sex with Ownby, she would either "give in" or tell him no. HLB testified that while being assaulted on one occasion, Ownby told her that she needed to "woman up" and be more like her mother. RP at 412. In closing, the State made a brief argument that TB was unable to fulfill Ownby's desire for sex and so Ownby chose HLB to fill his need for sex. The evidence of Ownby and TB's sexual relationship, when combined with Ownby's statement to HLB while he was assaulting her, is evidence of motive because it suggests that Ownby was seeking to fulfill a desire that TB was not meeting.

11

Ownby fails to cite any cases to support his position that, at the time of his second trial, this evidence would not be admissible to show motive. "Generally, ER 404(b) permits admission of evidence of prior bad acts for purposes other than propensity, 'such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.'" *State v. Crossguns*, 199 Wn.2d 282, 289-90, 505 P.3d 529 (2022). Here, the State argued that the evidence of Ownby's relationship with TB was relevant to show motive, and her heavy work schedule provided Ownby with access and opportunity.

Even assuming that Ownby is able to demonstrate that an objection would have been sustained, Ownby is unable to demonstrate that excluding the evidence would change the outcome of the trial. The evidence represented a small portion of the testimony and was not part of the main theory of the case. Notably, the State did not refer to the evidence until its rebuttal closing and then only to rebut defense counsel's argument that there was no evidence of grooming.

Ownby fails to demonstrate that his attorney's decision to not object was anything other than tactical, and fails to show that excluding the evidence would have changed the outcome of the trial. Ownby's counsel was not constitutionally ineffective.

2.      PROSECUTORIAL MISCONDUCT

Mr. Ownby raises two claims of prosecutorial misconduct during closing argument, neither of which were preserved at trial. First, he claims the State committed

12

misconduct when it argued that Ownby had physically abused NB despite the fact that

there was no evidence supporting that fact presented at trial.[3]  Second, he argues the State

committed misconduct when it argued that because Ownby was not able to have sex with

TB whenever he wanted, he raped and molested HLB.

A defendant claiming prosecutorial misconduct must show the prosecutor's

conduct was improper and prejudicial.  *State v. Walker*, 182 Wn.2d 463, 477, 341 P.3d

976 (2015).  A defendant's failure to object raises the bar. When a defendant fails to

object, we will reverse for prosecutorial misconduct during closing only if "the remark is

so flagrant and ill intentioned that it causes an enduring and resulting prejudice that could

not have been neutralized by an admonition to the jury." *State v. Russell*, 125 Wn.2d 24,

86, 882 P.2d 747 (1994). "In other words, a conviction must be reversed only if there is a

substantial likelihood that the alleged prosecutorial misconduct affected the verdict." *Id*.

A prosecutor commits misconduct when they rely on evidence not admitted at

trial.  *State v. Dhaliwal*, 150 Wn.2d 559, 577, 79 P.3d 432 (2003).  However, a

prosecutor "has wide latitude in closing argument to draw reasonable inferences from the

---

[3] Ownby suggests that "evidence of physical abuse is not admissible to show a defendant's propensity to commit sexual abuse." Br. of Appellant at 46.  Because this issue is not further developed, we decline to address it.  *See State v. Stubbs*, 144 Wn. App. 644, 184 P.3d 660 (2008) ("Passing treatment of an issue or lack of reasoned argument is insufficient to allow for our meaningful review."), *rev'd on other grounds by* 170 Wn.2d 117, 240 P.3d 143 (2010).

evidence and may freely comment on witness credibility based on the evidence." *State v. Lewis*, 156 Wn. App. 230, 240, 233 P.3d 891 (2010).

A prosecutor must "seek convictions based only on probative evidence and sound reason." *State v. Casteneda-Perez*, 61 Wn. App. 354, 363, 810 P.2d 74 (1991). Accordingly, a prosecutor also commits misconduct when they argue in a way that deliberately "appeal[s] to the jury's passion and prejudice." *Belgarde*, 110 Wn.2d at 507.

Ownby argues the State improperly argued facts not in evidence when it referred to the bathtub incident involving NB. At trial, the State introduced evidence that CPS investigated allegations that Ownby inflicted a bruise on NB's head. Although a risk was found, no findings were reported and no legal proceedings resulted from the investigation. On cross-examination, Ownby mischaracterized the testimony of the CPS workers. In closing argument, the State referenced this testimony:

> There's a presumption of innocence in this case, as in all criminal cases, but there's not a presumption of credibility. The defendant is presumed innocent but he is not presumed credible. His statements must be weighed in the same way as everyone else's. What he was willing to say on the stand, what he fought with the [S]tate about, what he stated to [defense counsel] after hearing testimony from CPS, he couldn't admit on the stand that he'd heard it and that he understood what that testimony was instead choosing to argue, "Well, it was—it was a bathtub." *Well, we know that's not what happened.*

RP at 641 (emphasis added).

14

While somewhat ambiguous, this argument refers to the evidence admitted at trial and the reasonable inferences therefrom. When asked to acknowledge the previous testimony of CPS workers, Ownby suggested that CPS believed the child's head injury could have come from the bathtub even though no witness provided this testimony. In closing, the State seems to be pointing out the discrepancy between the testimony of CPS workers and Ownby's attempt to mischaracterize the testimony. And it was reasonable to infer from the discrepancy that Ownby may not have been entirely forthcoming about what had "actually happened" in his testimony. RP at 641.

Additionally, the State's use of "we know" in its closing argument was not improper because, in context, the phrase was being used to draw a reasonable inference from the evidence and not to offer a personal opinion. This is a permissible use of the phrase. *State v. Robinson*, 189 Wn. App. 877, 894-95, 359 P.3d 874 (2015).

Ownby also argues that the State's rebuttal closing argument regarding Ownby's sexual relationship with TB was inflammatory and appealed to the passion and prejudice of the jury rather than the evidence presented at trial. As noted above, the State introduced, without objection, evidence about the sexual relationship between TB and Ownby. There was also evidence that while raping HLB, Ownby told her to be more like her mother. The State did not commit misconduct by referencing admitted evidence in its closing argument. *See Lewis*, 156 Wn. App. at 240.

15

We determine that the State's inferences and argument were not misconduct because they were based in evidence admitted during trial.

3.     COMMUNITY CUSTODY CONDITIONS

Ownby raises three challenges to his sentence and specifically to community custody conditions imposed by the court. The State concedes that the condition requiring substance abuse treatment was not crime-related and the condition prohibiting Ownby from engaging in a "romantic relationship" without permission is unconstitutionally vague. We accept the State's concessions and remand for the court to strike both conditions from Ownby's sentence.

Ownby also challenges the condition requiring Ownby to pay supervision fees as determined by DOC. This issue has been conclusively resolved by statutory amendment. RCW 9.94A.703 provides the community custody conditions a trial court is required to impose and which it may waive. The statute previously provided that an offender would be ordered to pay community custody supervision fees unless waived by the court. Former RCW 9.94A.703(2)(d) (2021). However, the legislature recently amended the statute and deleted this provision. *See State v. Wemhoff*, 24 Wn. App. 2d 198, 200, 519 P.3d 297 (2022). This court has determined that the amendment applies to cases, such as this, where the appeals have not been finalized. *Id*. at 202. Accordingly, on remand, this court should strike this condition from Ownby's sentence as well.

16

4.    STATEMENT OF ADDITIONAL GROUNDS (SAG)

In his SAG, Ownby argues that the State committed misconduct by asking HLB leading questions on direct examination in his first trial.  It is not clear how conduct during Ownby's first trial is relevant to this appeal following his second trial.  Therefore, we decline to address these issues.  RAP 10.10(c).

Ownby also argues that the State repeatedly committed misconduct in asking HLB leading questions at his second trial.  None of the instances Ownby cites to were objected to by defense counsel.  Accordingly, this court must determine not only whether the State committed misconduct but also whether any misconduct was so flagrant and ill-intentioned that a jury instruction could not have cured it.  *See Russell*, 125 Wn.2d at 86.

Leading questions are generally not permitted on direct examination "except as may be necessary to develop the witness' testimony."  ER 611(c).  Under this rule, the trial court has broad discretion to permit leading questions during the direct examination of children, especially those who are victims of sexual crimes.  *State v. Davis*, 20 Wn.2d 443, 446, 147 P.2d 940 (1944); *see also State v. Gallegos*, noted at 136 Wn. App. 1024, slip op. at 6 (2006) ("The trial court has broad discretion in allowing leading questions in the direct examination of minors, especially where the minor is unaccustomed to court proceedings or reluctant to testify because of the nature of the offense.").

Here, the trial court had broad discretion to allow the State to ask leading questions of HLB because she was twelve years old at the time of trial and testifying as

the victim of multiple sexual crimes. We conclude that the leading questions by the State during its examination of HLB were not misconduct but rather within the scope of what is permissible in cases such as these.

Affirmed and remanded for the trial court to strike the condition requiring Ownby to pay supervision fees as determined by DOC; to strike the condition that he complete a substance abuse evaluation and treatment; and the condition that he not engage in a romantic, dating, sexual relationship without permission from his SOTP therapist and CCO.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Staab, J.

WE CONCUR:

_____
Lawrence-Berrey, J.

_____
Siddoway, C.J.

18